UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATHZIRI CASTANEDA,<br>　　Plaintiff,<br>　v.<br>NANCY A. BERRYHILL,<br>　　Defendant. | Case No. 18-cv-07363-DMR<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 22, 28 |

Plaintiff Athziri Castaneda moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Castaneda no longer disabled due to medical improvement and therefore terminated her disability benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401 et seq. [Docket No. 22.] The Commissioner cross-moves to affirm. [Docket No. 28.] For the reasons stated below, the court grants in part Castaneda's motion and remands this matter for further proceedings.

## I.　BACKGROUND

On October 3, 2012, Castaneda was found disabled beginning on October 3, 2012. This is known as the "comparison point decision" or CPD. Administrative Record ("A.R.") 16. At the time of the CPD, Castaneda had affective mood disorder and major depressive disorder which resulted in the inability to sustain a normal 40-hour workweek. A.R. 17. On April 18, 2016, pursuant to a continuing disability review, the Social Security Administration found Castaneda was no longer disabled as of April 15, 2016. A.R. 15, 85. The determination was upheld on reconsideration following a hearing before a Disability Hearing Officer. A.R. 15, 104-110.

An Administrative Law Judge ("ALJ") held a hearing on December 21, 2017 and issued an unfavorable decision on March 6, 2018. A.R. 12-30. The ALJ determined that Castaneda did not

develop any additional impairments after the CPD through April 15, 2016 and that her impairments remained the same as of the CPD. A.R. 17. The ALJ found that medical improvement occurred on April 15, 2016 and that starting on that date, Castaneda had the following residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is capable of understanding, remembering, and carrying out simple one to two step unskilled tasks. She can maintain concentration, persistence, and pace throughout a normal workday and workweek as it relates to simple unskilled tasks. The claimant is able to interact adequately with coworkers and supervisors but should have no more than occasional interactions with coworkers and supervisors. She should have no interactions with the public. The claimant is able to make adjustments and avoid hazards in the workplace.

A.R. 19.

Relying on the opinion of a vocational expert ("VE") who testified that an individual with such an RFC could perform other jobs existing in the economy, including salvage laborer, laundry laborer, and fruit and vegetable packer, the ALJ concluded that "since April 15, 2016, [Castaneda] has been capable of making a successful adjustment to work that existed in significant numbers in the national economy," and is not disabled. A.R. 24-25.

After the Appeals Council denied review, Castaneda sought review in this court. [Docket No. 1.]

## II. CONTINUING DISABILITY REVIEW PROCESS

An individual is disabled for the purpose of receiving benefits under the Act if she demonstrates a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity that is expected to result in death or last for a continuous period of at least twelve months. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

After a person is found to be entitled to disability benefits, the Commissioner is required to

2

periodically review whether continued entitlement to such benefits is warranted. 42 U.S.C. § 421(i); 20 C.F.R. §§ 404.1589-1590. A claimant's benefits cannot be terminated unless substantial evidence demonstrates medical improvement in her impairment such that the claimant is able to engage in substantial gainful activity and is therefore no longer disabled. *See* 42 U.S.C. § 423(f)(1); 42 U.S.C. § 1382c(a)(4); 20 C.F.R. § 416.994; *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1460 (9th. Cir. 1995). To determine if the claimant continues to be disabled for Title XVI benefits, an ALJ conducts a seven-step inquiry. 20 C.F.R. § 416.994.

1. At the first step, the ALJ determines whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant does, the ALJ will find that the claimant continues to be disabled.

2. At the second step, the ALJ determines if medical improvement has occurred. If medical improvement has occurred, the ALJ will proceed to step three. If medical improvement has not occurred, the ALJ proceeds to step four.

3. At the third step, the ALJ determines whether medical improvement is related to the claimant's ability to work. If it is, the ALJ proceeds to step five.

4. At the fourth step, the ALJ determines whether an exception to medical improvement applies. There are two groups of exceptions. If one of the first group of exceptions applies, the ALJ will go to step five. If one of the second group of exceptions applies, the ALJ will find that the claimant's disability has ended.

5. At the fifth step, the ALJ determines whether all the claimant's current impairments in combination are severe within the meaning of 20 C.F.R. § 416.994(b)(5)(v). If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the ALJ will find that the claimant is no longer disabled.

6. At the sixth step, the ALJ assesses the claimant's RFC based on her current impairments and determines if she can perform past relevant work. If the claimant has the capacity to perform past relevant work, the ALJ will find that the claimant's disability has ended. If not, the ALJ proceeds to the final step.

3

7. At the seventh and final step, the ALJ determines whether other work exists in significant numbers in the national economy that the claimant can perform, given her RFC and considering her age, education, and past work experience. If the claimant can perform other work, the ALJ will find that she is no longer disabled. If the claimant cannot perform other work, the ALJ will find that her disability continues.

## III. ISSUES FOR REVIEW

Castaneda argues that the ALJ's determination that medical improvement occurred is not supported by substantial evidence. She also argues that the ALJ's assessment of her RFC as of April 15, 2016 is not supported by substantial evidence. Therefore, the issues are as follows:

1. Did the ALJ err in finding that medical improvement occurred?
2. Is the ALJ's determination of Castaneda's RFC as of April 15, 2016 supported by substantial evidence?

## IV. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the district court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was

4

inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

**V. DISCUSSION**

Castaneda argues that the ALJ's finding of medical improvement is not supported by substantial evidence, asserting that the ALJ's conclusion that Castaneda did not develop any additional impairments after the CPD beyond affective mood disorder and major depressive disorder is inaccurate. She notes that treatment records from 2017 show that she met the criteria for schizophrenia and agoraphobia. According to Castaneda, the ALJ did not adequately evaluate the limitations posed by these impairments that occurred when she is out in public and around other people, and instead "focused too narrowly" on her symptoms of depression and affective mood disorder in assessing whether she had improved. Pl.'s Mot. 10.

The regulations define medical improvement as "any decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant] [was] disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with [the claimant's] impairment(s)." 20 C.F.R. § 416.994.

The record consistently documents Castaneda's complaints of auditory and visual hallucinations and providers' diagnoses of schizophrenia. For example, in 2012, Castaneda's therapist and care manager noted her diagnosis of schizophrenia and its impact on her functioning. Importantly, he noted that she had been diagnosed with schizophrenia "using the SCID (Structured Clinical Interview for the DSMIV TR), a th[o]rough assessment that was completed at the PART Program at UCSF." A.R. 335-36. The following year, a psychiatrist, Dr. Tim Sinclair, examined her and wrote that Castaneda experienced "paranoid thoughts and 3rd person derisive auditory hallucinations," and that although "her presentation is a bit atypical for schizophrenia," he felt that schizophrenia was "the most accurate diagnosis." A.R. 548-49. Medical records in 2013 and 2014 contain references to Castaneda's hallucinations. *See* A.R. 429 (Feb. 18, 2014), 559 (Sept. 4, 2013), 561 (June 10, 2013).

5

In 2017, when Castaneda resumed treatment, her provider, Susana Scotti, Ph.D., wrote that Castaneda met the criteria for schizophrenia, multiple episodes, currently in partial remission. A.R. 656. Castaneda repeatedly endorsed auditory and visual hallucinations. A.R. 630-37, 655, 663. In September 2017, a medical provider with the San Francisco Department of Public Health noted her schizophrenia diagnosis and prescribed lurasidone, an anti-psychotic. A.R. 706-16.

Similarly, the record contains references to symptoms and diagnoses of agoraphobia. In 2014, before the date of purported medical improvement, providers twice noted agoraphobia in treatment notes, writing in February 2014 that she "goes out only about twice a week" and in August 2014 that she was "still not getting out much. A.R. 513, 534. In 2016, one provider listed agoraphobia along with anxiety and paranoid schizophrenia as her diagnoses. A.R. 689. In April 2017, Dr. Scotti found that Castaneda appeared to meet the criteria for agoraphobia. A.R. 656. The record also contains numerous references to symptoms of agoraphobia, including in Castaneda's own reports to the Social Security Administration. In a February 2016 function report, she reported that she goes outside "maybe" three times per week but does not go out alone as she gets "really anxious and nervous when outside" by herself. A.R. 249. In April 2016, she reported that she needs someone to be with her when doing things outside, including using public transportation, because she is "uncomfortable, anxious and nervous." A.R. 266, 268. Finally, at the December 21, 2017 hearing, she testified that she does not go outside by herself because she gets "really anxious and paranoid." A.R. 37.

Despite this evidence, the ALJ concluded that Castaneda did not develop any additional impairments after the CPD through April 15, 2016. A.R. 17. As part of the continuing disability review process, an ALJ must determine whether all of a claimant's current impairments in combination are severe pursuant to 20 C.F.R. § 416.921, and must consider the impact of the combination of all impairments on a claimant's ability to function. 20 C.F.R. § 416.994(b)(5)(v). When the evidence shows that all of a claimant's current impairments in combination do not significantly limit his or her physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. *Id.* A severe impairment "must be established by objective medical evidence from an acceptable medical source," 20 C.F.R. §

416.921, and the ALJ must "consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citations omitted).

The ALJ did not discuss or explain her conclusion about Castaneda's severe impairments in any detail. However, the court finds that any error with respect to the ALJ's failure to consider Castaneda's diagnosis of schizophrenia as a severe impairment was harmless because substantial evidence supports the conclusion that her symptoms of schizophrenia do not significantly limit her abilities to do basic work activities. The ALJ discussed Castaneda's symptoms of schizophrenia in the opinion, noting that Castaneda endorsed "severe symptoms including auditory hallucinations" at the time of the CPD but that the evidence showed that her symptoms had improved by 2016. A.R. 18-22. The ALJ also discussed Castaneda's resumption of treatment in 2017 and the records from that time. A.R. 21. In February and June 2016, Castaneda denied any hallucinations. A.R. 436, 687, 689. When Castaneda resumed treatment in 2017, she reported weekly hallucinations. A.R. 663 (Apr. 7, 2017 treatment note). However, later that month, she denied any auditory hallucinations and reported only occasional visual hallucinations in the form of seeing shadows in her home. A.R. 655. By November 2017, Castaneda reported hearing a male voice commenting on her appearance but "stated that hearing the voice is 'not a problem'" and that she was able to cope with her hallucinations. A.R. 485, 492. The provider described her as "lighthearted throughout the interview process" and reported that Castaneda said she was "hopeful" and motivated. A.R. 491. The court finds that substantial evidence supports the ALJ's conclusion that Castaneda's hallucinations improved by April 2016; therefore, any error as to whether schizophrenia is a severe impairment was harmless.

The court reaches a different conclusion as to the ALJ's failure to consider Castaneda's documented diagnosis and symptoms of agoraphobia. As discussed above, Dr. Scotti found that Castaneda appeared to meet the criteria for agoraphobia in April 2017. A.R. 656. Castaneda repeatedly reported symptoms of agoraphobia to the Social Security Administration and to treatment providers in 2017. The ALJ noted this evidence, including Castaneda's statements that she felt "anxious when walking outside," A.R. 687 (July 19, 2016 note, "fearful/anxious when

7

walking outside, stopped going to school because she did not like to walk back and forth outside from home to school"), that "her anxiety was more troubling [than hallucinations]," A.R. 485 (Nov. 17, 2017 note, "her anxiety was more centered on disliking her commute to school"), that she "still had problems going into public spaces alone," A.R. 632 (June 5, 2017 note, "avoids public transportation/crowded spaces …due to fear of being trapped and experiencing heightened anxiety), and that in September 2017, "she again complained of agoraphobia, she did not like to be in crowded places such as a bus and reported a tendency to isolate at home." A.R. 713 (Sept. 5, 2017 note). Despite this evidence, the ALJ did not include agoraphobia in her discussion of whether Castaneda had developed any additional impairments after the CPD, even though as part of the continuing disability review process, an ALJ must determine whether *all* of a claimant's current impairments in combination are severe and must consider the impact of the combination of all impairments on a claimant's ability to function. 20 C.F.R. § 416.994(b)(5)(v). Moreover, the ALJ provided very little analysis of Castaneda's diagnosis and symptoms of agoraphobia and did not set forth any reasons for discounting the most recent evidence of the same. Therefore, the court cannot say that substantial evidence supports the ALJ's apparent determination that Castaneda does not have agoraphobia and/or that Castaneda's agoraphobia is not a severe impairment within the meaning of the regulations. The ALJ thus erred in finding medical improvement based solely on Castaneda's affective mood disorder and major depressive disorder. For this reason, the ALJ's assessment of Castaneda's RFC was not supported by substantial evidence, because "an RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r. of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

## VI. CONCLUSION

For the foregoing reasons, Castaneda's motion for summary judgment is granted in part. This matter is remanded for further proceedings in a manner consistent with this opinion.

**IT IS SO ORDERED.**

Dated: March 23, 2020



_____
Donna M. Ryu
United States Magistrate Judge

8